UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUROK TRIBE,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. BUREAU OF RECLAMATION,<br><br>    Defendant. | Case No. 20-cv-05891-WHO<br><br>**ORDER DENYING MOTION TO INTERVENE**<br><br>Re: Dkt. No. 33 |

Klamath Irrigation District ("KID") moves to intervene in the stayed litigation between the Yurok Tribe and United States Bureau of Reclamation ("Bureau") over the Bureau's refusal to release water into the Klamath River for the Tribe's 2020 Boat Dance ceremony. KID contends that the government is no longer representing its interests in the matter and seeks to intervene so that it can file an answer and crossclaim challenging the Bureau's authority to allocate water from Upper Klamath Lake ("UKL") for the Boat Dance.

KID's motion is DENIED. Although the Yurok Tribe waived its sovereign immunity by filing this suit, that waiver was limited and does not extend to the issues that KID seeks to interject in this case. The waiver was explicitly and only for the purpose of determining whether the Bureau acted in an arbitrary and capricious manner in refusing to release the water, violating the Administrative Procedure Act ("APA"). KID's proposed answer and crossclaim amount to an adjudication of water rights, an issue beyond the scope of the Tribe's waiver. Moreover, allowing KID to intervene and raise those issues in this case would be duplicative of other litigation, including a related case before me in which I have already allowed KID to intervene.

**BACKGROUND**

The lower Klamath River is essential to the identity, culture, and livelihood of the Yurok

Tribe, a sovereign nation and federally recognized Indian Tribe. *See* First Am. Compl. ("FAC") [Dkt. No. 15] ¶¶ 7-9. The Yurok Reservation stretches for one mile on each side of the river, beginning near the Yurok village of Weitchpec and ending approximately 45 miles away, at the river's mouth at the Pacific Ocean. *Id*. at ¶¶ 1, 9. Yurok people embrace a "river-centric way of life," living alongside the river, fishing, and using the water for cultural, spiritual, and religious purposes. *See id*. at ¶¶ 1, 10-11.

The river is also vital to the Klamath Project, a series of dams, diversions, and canals that delivers water to various stakeholders—including the Yurok Tribe, farmers, commercial fishers, and wildlife—in Northern California and Southern Oregon. The Bureau is tasked with operating the Klamath Project, which includes managing the Klamath River's waterflow through scheduled releases from Upper Klamath Lake in Oregon. *See id*. at ¶¶ 12, 14. The Bureau currently operates the Project according to the 2019-2024 Klamath Project Operations Plan ("the 2019-2024 Plan") and an Interim Operations Plan ("the Interim Plan"). *Id*. at ¶ 1. The Bureau's management of the Project and the water within has been—and continues to be—the subject of much litigation, particularly as drought conditions threaten the water supply.

At issue here is the Yurok Tribe's Boat Dance, part of a traditional religious ceremony (called the "world renewal ceremony") held in late summer in even-numbered years. *Id*. at ¶ 16. During the Boat Dance, Yurok religious practitioners travel down the Klamath River, dancing in large, hand-carved canoes. *Id*. at ¶ 17. The water must be at a sufficient depth for the Boat Dance to occur; otherwise, the canoes will hit rocks, veer off course, and potentially injure participants. *Id*. Without the Boat Dance, "the world renewal ceremony cannot be completed." *Id*.

According to the Yurok Tribe, the river flows at the ceremony site must be augmented in order for the Boat Dance to safely occur. *Id*. at ¶ 18. Both the 2019-2024 Plan and Interim Plan include the allocation of 7,000 acre-feet of water from UKL in even-numbered years for the Boat Dance. *See id*.

In May 2020, the Bureau "began cutting off augmented river flows required under the [Interim Plan], citing difficult hydrologic conditions." *Id*. at ¶ 25. In response, the Yurok Tribe moved to lift the stay in a related case and sought a temporary restraining order requiring the

Bureau to adhere to the water allocations set forth in the Interim Plan. *See id.*; *see also Yurok Tribe v. U.S. Bureau of Reclamation*, No. 19-CV-04405-WHO, 2020 WL 2793945, at *1 (N.D. Cal. May 29, 2020). I denied their request to lift the stay in that case and the request for the restraining order as moot, citing in part the Bureau's need to exercise its discretion under the Interim Plan to respond to dry conditions. *See Yurok Tribe*, 2020 WL 2793945, at *5.

Water conditions improved, and in early June 2020, the Bureau told the Yurok Tribe and other stakeholders that additional water could be allocated. FAC at ¶ 27. The Tribe requested, in part, a commitment from the Bureau to provide the 7,000 acre-feet of water for the Boat Dance. *Id*. The Tribe reiterated its request later in June, July, and August. *Id*. at ¶ 28. Each time, it contends, the Bureau responded that it "could not commit the flows until closer to the ceremony when water forecasts and Upper Klamath Lake levels were more certain." *Id*.

Despite improving water conditions and increasing volume in UKL, the Bureau notified the Tribe on August 19, 2020, that it would not provide the flows for the Boat Dance. *Id*. at ¶¶ 29, 31. The Yurok Tribe filed this lawsuit two days later. *See* Dkt. No. 1. The Tribe's amended complaint alleges that the Bureau's deviation from the Interim Plan and 2019-2024 Plan and refusal to provide the 7,000 acre-feet of water for the Boat Dance was arbitrary and capricious, and thus violated the APA. *See id*. at ¶¶ 34-42.

The Bureau filed a motion to dismiss on December 11, 2020. *See* Dkt. No. 16. One month later, the parties stipulated to a stay so that they could discuss settlement. *See* Dkt. Nos. 17-19. That stay has been extended five times, most recently on March 30, 2022. *See* Dkt. Nos. 34, 36. The Yurok Tribe and Bureau are still engaged in settlement discussions. *See* Dkt. No. 34.

On March 18, 2022, KID filed this motion to intervene, seeking permission to file an answer and crossclaim against the Bureau. *See* Dkt. No. 33.

**LEGAL STANDARD**

**I.    SOVEREIGN IMMUNITY**

Federally recognized tribes like the Yurok Tribe possess inherent sovereign authority, derived from their status as "separate sovereigns preexisting the Constitution." *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (citations omitted). The Supreme Court has

3

held that immunity from suit is a core aspect of this sovereignty, calling it a "necessary corollary to Indian sovereignty and self-governance." *Id*. (citations omitted).

"There are only two ways in which a tribe may lose its immunity from suit." *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016). Congress may abrogate tribal immunity. *Id*. (citing *Bay Mills*, 572 U.S. at 788). A tribe may also waive its immunity. *Id*. Any waiver "cannot be implied but must be unequivocally expressed" in a manner that manifests the tribe's "intent to surrender immunity in clear and unmistakable terms." *See id*. (citations and quotation marks omitted). Under the Ninth Circuit's case law, "[t]here is a strong presumption against waiver of tribal sovereign immunity." *See, e.g.*, *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001). If a tribe enjoys sovereign immunity (that has not be abrogated or waived), the court lacks subject matter jurisdiction to hear the matter asserted. *See Oertwich v. Traditional Village of Togiak*, 29 F.4th 1108, 1117-18 (9th Cir. 2022).

## II. INTERVENTION

Federal Rule of Civil Procedure 24 includes provisions for both intervention of right and permissive intervention. Under Rule 24(a), on timely motion, the court "must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

The court may also allow intervention, on timely motion, to anyone who:

> (A) is given a conditional right to intervene by a federal statute; or
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1).

## DISCUSSION

The Yurok Tribe expressly and unequivocally waived its sovereign immunity when it filed

4

this suit. *See McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989) ("Initiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy."); *see also* Yurok Tribe Oppo. [Dkt. No. 39] 13:15-21 ("By bringing this lawsuit, the Yurok Tribe waived its sovereign immunity . . ."). The dispositive question, for the purposes of KID's motion to intervene, is whether the scope of that waiver extends to KID's crossclaims.

      The Supreme Court has long made clear that a tribe's waiver of sovereign immunity by filing suit does not constitute a waiver for all claims. *See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) (citing *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 511-13 (1940)). The Ninth Circuit has also affirmed this principle, declaring it an "unremarkable premise that the bare act of filing suit does not operate as a complete, automatic waiver that subjects a tribe to any counterclaims filed by the defendant." *Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1097 (9th Cir. 2017); *see also McClendon*, 885 F.2d at 630 ("[A] tribe's waiver of sovereign immunity may be limited to the issues necessary to decide the action brought by the tribe; the waiver is not necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts."). Instead, the "scope of the waiver depends on the particular circumstances, including the tribe's actions and statements court as well as the nature and bounds of the dispute that the tribe put before the." *Quinault Indian Nation*, 868 F.3d at 1097.

      Both the Yurok Tribe and Bureau argue that KID's motion to intervene should be denied because its lodged answer and crossclaim raise claims that go beyond the Tribe's waiver of sovereign immunity. *See* Yurok Tribe Oppo. at 13:15-21; *see also* U.S. Oppo. [Dkt. No. 38] 5:20-6:8. They contend that the Tribe's waiver was limited: to adjudicate only whether the Bureau violated the APA when it did not provide the water flows for the Boat Dance ceremony. *See* Yurok Tribe Oppo. at 9:10-15; U.S. Oppo. at 5:20-24. By challenging the Bureau's authority to release water for the Boat Dance ceremony, they argue, KID effectively attempts to adjudicate the Yurok Tribe's water rights—an issue far outside the Tribe's waiver. *See* Yurok Tribe Oppo. at 14:22-15:21; U.S. Oppo. at 6:9-16.

      KID contends that its claims are within the Yurok Tribe's waiver of sovereign immunity.

1  *See* Reply to U.S. [Dkt. No. 46] 5:13; Reply to Yurok Tribe [Dkt. No. 47] 8:16-17.[1]  It argues that
2  the claims are "inextricably linked" to the basis for and relief requested in the Tribe's amended
3  complaint.  Reply to Yurok Tribe at 9:19-22 (citing *United States v. Oregon*, 657 F.2d 1009 (9th
4  Cir. 1981)).  According to KID, its crossclaim concerns the same documents (the 2019-2024 Plan
5  and Interim Plan), raises the same issue (whether the Bureau can lawfully use water from UKL to
6  provide the Tribe water for religious ceremonies), and prays for relief that forms the basis for the
7  Tribe's APA claim ("delineating the parties' rights under the Endangered Species Act [and] the
8  Reclamation Act").  *See id*. at 10:27-11:17.

KID mischaracterizes the amended complaint.  At its heart, the Yurok Tribe seeks adjudication of a narrow issue: whether the Bureau acted in an arbitrary and capricious manner (thereby violating the APA) when it deviated from the 2019-2014 Plan and Interim Plan and refused to release water for the Boat Dance.  *See* FAC at ¶ 38.  It seeks a declaration that the Bureau violated the APA in doing so, and an injunction preventing the Bureau from deviating from the plans again for reasons not provided in the plans or "other controlling law."  *See id*. at 13. It only mentions the Endangered Species Act ("ESA") in passing, to provide context for its allegations.  *See id*. at ¶¶ 25, 32, 40.  It does not mention the Reclamation Act at all.  *See generally id*.  Neither of these Acts form the basis of the Tribe's claims.  *See id*. at ¶¶ 34-42.  Importantly, the amended complaint does not wade into any sort of adjudication of water rights; rather, it focuses on whether the Bureau acted unlawfully when it deviated from the two operative plans.

KID's answer and crossclaim raise issues far broader, primarily whether the Bureau has water rights in UKL or authority under the ESA or the Reclamation Act to distribute water for the Tribe's religious purposes.  *See* Cross-cl. [Dkt. No. 33-2] ¶¶ 48-49; *see also* Answer [Dkt. No. 33-2] ¶¶ 40, 42.  KID bases its APA claims on alleged violations of the Reclamation Act and orders issued by the state of Oregon.  *See* Cross-cl. at ¶¶ 51-65.  The declaratory relief it seeks is one "setting forth the parties' rights under the Endangered Species Act, the Reclamation Act, and the

---

[1] KID's responses to the Yurok Tribe and Bureau's arguments regarding sovereign immunity are nearly identical.  *See* Reply to Yurok Tribe at 8:16-12:9; *see also* Reply to U.S. at 5:13-8:21.  In an effort to streamline the forthcoming citations, I will cite to KID's reply to the Yurok Tribe.

United States District Court
Northern District of California

1  Fifth Amendment to the United States Constitution," with corresponding injunctive relief. *See id*.
2  at 25. By challenging the Bureau's authority to release water from the UKL for the Boat Dance on
3  these grounds, KID effectively seeks an adjudication of water rights. This goes beyond the nature
4  and bounds of the dispute that the Yurok Tribe raised in its complaint.

5  KID relies primarily on *Oregon* in arguing that the claims are "inextricably linked," but
6  that case is distinguishable. *See* Reply to Yurok Tribe at 9:6-22. In *Oregon*, the original action
7  sought a declaration of fishing rights among competing sovereigns, prompting the Yakima Tribe
8  to intervene. 657 F.2d at 1011. When the parties (including the Yakima Tribe) reached an
9  agreement, the district court retained continuing jurisdiction over future disputes. *See id*. The
10 Ninth Circuit held that sovereign immunity was therefore no barrier when the state of Washington
11 later sought an injunction preventing the Yakima Tribe's fishing of certain salmon, declaring the
12 salmon's existence "inextricably linked" to the fishery underlying the initial suit. *See id*. at 1016.

13 But the Yurok Tribe does not seek a declaration of water rights. Rather, the issue
14 presented is whether the Bureau acted unlawfully when it deviated from the 2019-2014 Plan and
15 Interim Plan and did not release water for the Boat Dance. Critically, unlike the Yakima Tribe, the
16 Yurok Tribe did not unequivocally consent to litigating the dispute that KID attempts to bring.
17 Rather, the Yurok Tribe made clear in its amended complaint that it did not waive sovereign
18 immunity regarding "any claim, demand, offset, or cause of action of the United States, its
19 agencies, officers, agents, *or any other person or entity* in this or any other court." *See* FAC at ¶ 7
20 (emphasis added). Far from expressly waiving its sovereign immunity as to other claims, the
21 Tribe expressly invoked it.

22 This matter is more similar to *McClendon* and *Quinault Indian Nation*. In *McClendon*, the
23 court held that the waiver of sovereign immunity to litigate ownership of land did not extend to a
24 "collateral" dispute over a lease governing that land. *See* 885 F.2d at 631. In *Quinault Indian*
25 *Nation*, the court readily determined that the Nation had not waived sovereign immunity to litigate
26 counterclaims addressing different subject matter (including the Nation's refusal to grant a
27 convenience shop business permits and an alleged price-fixing scheme with the state) than its own
28 claims (alleging that the shop owners defrauded the Nation of cigarette taxes). *See* 838 F.3d at

7

1098. When faced with the "closer call" of whether the Nation consented to litigating another part of the counterclaim—seeking a declaration that the defendant obeyed the tax code—the court held that although the Nation "took the risk that the court would rule for [the defendant] on the merits and deny the Nation's requested legal relief," it "did not waive its immunity because it did not consent to any counterclaims." *See id*. The same is true here.

Although sovereign immunity provides sufficient grounds for denying KID's motion, allowing KID to intervene in this case would also be duplicative of issues already raised elsewhere: *Yurok Tribe v. U.S. Bureau of Reclamation*, No. 19-CV-04405-WHO (N.D. Cal. filed July 13, 2019). That case, in which I allowed KID to intervene, better aligns with the primary question raised in KID's proposed answer and crossclaim: whether Oregon law precludes the Bureau from releasing water from UKL to satisfy its obligations to other stakeholders. Although that case expressly does not involve the adjudication of any water rights—again because of sovereign immunity—it focuses on the interplay between Oregon law, the ESA, the Reclamation Act, and the Bureau's operation of the Klamath Project. To the extent that KID's claims do not rest on any adjudication of water rights, they fit better there.

In sum, the Yurok Tribe's wavier of sovereign immunity does not extend to KID's claims. Moreover, allowing KID to intervene would be duplicative of another case in which KID has already intervened. KID's motion is therefore DENIED.[2]

**CONCLUSION**

KID's motion to intervene is DENIED.

**IT IS SO ORDERED.**

Dated: May 16, 2022

William H. Orrick
United States District Judge

---

[2] Because KID's motion is barred by sovereign immunity, I need not address the parties' arguments related intervention as a matter of right or permissive intervention under Rule 24.